## Commonwealth *v*. Miller, Appellant.

Argued November 19, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and POMEROY, JJ.

*John P. Quinn,* for appellant.

*Joseph Grano,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 18, 1971:

Appellant was found guilty of second-degree murder by a judge, sitting without a jury, and sentenced to a term of imprisonment of two to ten years. The evidence is undisputed that a fight between the appellant and the victim began shortly after 7:00 p.m. on July 4, 1968, in a bar on the corner of Columbia Avenue and

Sydenham Street, Philadelphia, and thence erupted into the street. It is furthermore undisputed that the victim died of stab wounds inflicted by the appellant.

The only eyewitness to testify for the Commonwealth was the decedent's brother, James Gaillard. He testified that he was standing on the north sidewalk of Columbia Avenue, about four doors from Smitty's Bar, when he saw his brother, Herbert, the decedent, and the appellant come out of the bar, grappling, with the appellant holding a knife. He said he saw the appellant strike his brother once with the knife, but his brother broke away and ran west up the middle of the street with the appellant in pursuit; that his brother ran to the south side of the street, slipped and fell, and on the south sidewalk near the curb was overtaken by the appellant, who then stabbed him repeatedly. His further testimony was that his brother was on his back, lying face up, with the appellant straddling his legs and striking downward.

The Commonwealth also offered evidence that the decedent suffered seven stab wounds in all, one critical, the other six superficial. The critical one was on the right side, seven inches above the hip bone, penetrating the thorax right to left, involving both vein and artery between the eighth and ninth ribs, and the right lung, diaphragm and liver.

The appellant's own testimony and that of three witnesses called by him as to events inside the bar was that the decedent pulled the knife on the appellant and a struggle ensued for possession of it. All three of appellant's witnesses testified that they left while the wrestling was still in progress. None of the three testified that he saw any serious wound being inflicted during the fighting in the bar. Only the appellant testified that the knife changed hands inside the bar, and that appellant inflicted any of the decedent's wounds

there. Even the appellant was unable to say whether any wound below the decedent's shoulders had been inflicted in the early, indoor, stage of the fight, but he did testify that decedent was still fighting in the middle of the street, that they dragged each other up off the ground to continue fighting, that they "tussled" all the way over to the opposite side of the street, and there the decedent got away from him, while he, the appellant, ran, throwing the knife away as he did so.

The appellant's principal contention is that the trial judge erred in finding the appellant guilty of second-degree murder in the light of inconsistencies and inadequacies of the Commonwealth's principal witness, James Gaillard, the decedent's brother, and in light of the fact that Gaillard testified that the decedent was bleeding when the two men were first seen tussling.

In the appellant's opinion the only logical conclusion to be reached from this testimony and that of the appellant and his witnesses was that the victim received the fatal wound inside the bar, immediately after he had attacked the appellant, which would indicate that the homicide was a case of, at most, voluntary manslaughter, not second-degree murder.

We agree with the trial court's view of the facts. As the court wrote in its opinion: "It would be directly in the teeth of this testimony for a trier of fact to infer that decedent was capable of engaging in so vigorous a struggle for so long an interval had he suffered his mortal wound in the very beginning at first onset, inside the bar. . . . Further, in view of the physical evidence of the number of wounds inflicted on decedent, and their being directed not only to his face and the front of his body, but his side and back as well, this trier of fact is convinced beyond a reasonable doubt that even if the defendant was the victim of the original aggression, his response to it was with force

so disproportionate, excessive and prolonged, as to require his conviction of second degree murder. There is testimony also that the decedent had broken off the fight and was fleeing with defendant chasing him, which the trial judge finds corroborated by the physical evidence of knife cuts in the back of the decedent's shirt."

The appellant also contends that the inordinate amount of cross-examination of the appellant and his witnesses by the judge and the manner in which this cross-examination was conducted clearly deprived the appellant of a fair and impartial trial. According to the appellant, the trial judge's conduct showed his bias against the appellant's case. We have examined the record thoroughly in the matter. Although we agree with the appellant and with the trial judge himself that his vigorous participation would not be permitted in a jury trial because it might unduly influence the jury, where there is no jury and, therefore, no such prejudice can result, we see no harm in permitting the judge to interrogate witnesses to bring the facts before him more clearly.

The appellant also argues that the court erred in allowing into evidence decedent's deathbed statement naming "Jerry the Barber" as the man who stabbed him. He admits that the point is "somewhat minute" because the appellant freely admitted that he was the one who stabbed the decedent. Moreover, the decedent's dying declaration had no bearing on the appellant's contention that the homicide was at most a voluntary manslaughter, not a second-degree murder. Nevertheless, he argues that the court's ruling is further indication of the court's bias against him. We find no bias. The court's ruling was correct.

Judgment affirmed.

Mr. Justice COHEN took no part in the decision of this case.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.